B. CHRISTINE PARK (#234689)
**CHRISTINE PARK LAW FIRM, APC**
3435 Wilshire Blvd., Suite 400
Los Angeles, CA 90010
Tel.: (323) 578-6957
Facsimile: (213) 289-1977
Email: boksoonpark@gmail.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JISU CHA, JAEHYUN KIM, and JUN-HYUN KIM, individually and as successors-in-interest to JIHUN KIM, Decedent,

          Plaintiffs,

v.

HIOSSEN, INC. a Pennsylvania corporation, WILLIAM E. SHIN aka EUN HO SHIN, an individual, and DOES 2-30,

          Defendants.

Case No. 2:23-cv-00691-AB-PD

(Los Angeles County Superior Court Case No. 22STCV40532)

Complaint filed on December 28, 2022
Trial Date: Not Set

**PLAINTIFFS' AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL AND VIOLATIONS OF LABOR LAW**

1) Wrongful Death: Serious, Willful and Malicious Misconduct;
2) Wrongful Death: Negligence;
3) Intentional Infliction of Emotional Distress;
4) Survival Action;
5) Misclassification of Employee
6) Failure to Pay Overtime and Double-time Wages;
7) Failure to Provide Meal Time Breaks;
8) Failure to Provide Rest Breaks;
9) Breach of Contract;
10) Failure to Reimburse Expenses;
11) Failure to Pay Earned Wages;
12) Failure to Provide Accurate Wage Statements; and
13) Unfair Business Practices in Violation of Business & Professions

1

1 _____    Code Section 17200 et seq.

2

3 TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4          Plaintiffs, JISU CHA, JAEHYUN KIM, and JUN-HYUN KIM, individually and

5 as successor-in-interest to Decedent JIHUN KIM ("Decedent", "Kim" or "Jihun"),

6 (collectively, "Plaintiffs"), hereby submit their Amended Complaint and allege as

7 follows:

8                                    THE PARTIES

9          1.      Decedent, JIHUN KIM ("Jihun", "Kim" or "Decedent"), was an individual

10 and employee of HIOSSEN, INC. ("Hiossen", "Employer" or "Defendant").  He was a

11 resident of the state of California, County of Los Angeles.

12          2.      Plaintiff, Mrs. JISU CHA, is an individual and resides in, Los Angeles

13 County, California.  Mrs. Cha is also the surviving spouse of Decedent.

14          3.      Plaintiff, JAEHYUN KIM, is an individual and resides in the County of

15 Los Angeles, California. Miss Jaehyun Kim ("Jae") is the surviving daughter of

16 Decedent.

17          4.      Plaintiff, Mr. JUN-HYUN KIM, is an individual and resides in the County

18 of Los Angeles, California.  Mr. Jun-Hyun Kim ("Jun") is the surviving son of

19 Decedent.

20          5.      Each of the Plaintiffs, herein, is a successor-in-interest to Decedent, Jihun

21 Kim's, estate.  (See Declarations regarding their interests in the estate, **Exhibits A, B,**

22 **and C**, which also attach Jihun Kim's Death Certificate as Exhibit 1.)

23          6.      Defendant HIOSSEN, INC. is a Pennsylvania corporation, doing business

24 in the state of California.  Hiossen's principal office in California is located in West

25 Covina, California.  Hiossen regularly conducts business in California. Hiossen sells

26 dental products to many dental offices throughout the state of California, including in

27 Los Angeles, San Diego, San Jose, San Francisco, Fresno, Santa Barbara, San Luis

28 Obispo, Santa Maria, Bakersfield, and Orange County.

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

7.     DOE 1 Defendant, WILLIAM E. SHIN aka "EUN HO SHIN" ("Shin"), is an individual. Based on information and belief, it is alleged that Shin is a resident of San Jose, Santa Clara County, California. During the relevant times, Shin was one of the executive directors of Hiossen, in charge of the west coast branch of Hiossen.

8.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 2 through 30, and each of them, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will ask leave of Court to amend this Complaint when the true names and capacities have been ascertained.  Plaintiffs are informed and believe and thereon allege that each of said defendants is responsible in some manner for the events and happenings alleged herein and were a legal cause in fact of the damages as alleged herein.

9.     Defendants Does 2 through 30, inclusive, and each of them, are sued herein under said fictitious names. Their true names and capacities are unknown to Plaintiffs. When said Defendants' true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants. Each reference in this Complaint to "Defendants", or a specifically named Defendant refers also to all defendants sued under fictitious names.

10.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendants, including all defendants sued under fictitious names, was acting as the agent, principal, employer, employee, partner, joint venturer, affiliate, subsidiary, co-conspirator and/or alter ego of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency, employment, partnership, venture, affiliation and/or conspiracy, each with the permission, authority, knowledge, consent, affirmation and/or ratification of each of the other Defendants and/or specifically authorized, directed or

3

participated in the conduct alleged herein. Among other things, Plaintiffs are informed and believe and thereon allege that each Defendant conspired with each other and aided and abetted each other in the actionable conduct described herein. As a result, Defendants are jointly and severally liable for the acts alleged herein.

11.    DOE defendants 20 through 30 and each of them, are sued herein under said fictitious names. Their true names and capacities are unknown to Plaintiffs. When said Defendants' true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is an insurance company or its agent or representative with a duty to insure, indemnify and/or pay for the loss alleged herein, and is responsible in some manner for payment of damages suffered by Decedent and Plaintiffs.

12.    Plaintiffs are informed and believe and thereon allege that there exists, at all times herein mentioned, a unity of interest and ownership between the Defendants such that said parties are alter egos.  Specifically, Plaintiffs are informed and believe that:

    a.  Defendants concealed and misrepresented the identity of the responsible ownership, management and financial interest of themselves and Does 2 through 20, respectively;

    b.  Defendants, including Does 2 through 20, commingled their funds and other assets, failed to segregate funds of the separate entities, and engaged in the unauthorized diversion of corporate funds or assets to other than corporate uses;

    d.  Defendants, including Does 2 through 20, treated the assets of other Defendants' as their own;

    e.  Defendants were mere shells, instrumentalities and conduits through which other Defendants carried on their business in corporate names;

    f.  Defendants exercised control and dominance over other Defendants to such

4

an extent that any individuality or separateness of each of the Defendants does not, and at all times herein mentioned, did not exist;

g.  Defendants are, and at all times herein mentioned, were controlled, dominated and operated by each other as each other's individual businesses and alter egos, in that the activities and business of Defendants' companies were carried out without the holding of official meetings, records or minutes of any official proceedings were not maintained, and Defendants entered into personal transactions with each other;

h.  Compared with the business to be done by Defendants, and the risks of loss attendant thereon, their capitalization was illusory;

i.  Defendants diverted assets from each other;

k.  Defendants manipulated assets and liabilities between each other so as to concentrate the assets in one and the liabilities in the other; and

l.  Defendants acted as a subterfuge of illegal transactions with other Defendants, including Does 2 through 20.

13.   Defendants were at all relevant times in this action the alter ego of the shareholders/owners because there was a unity of interest as they used the companies as mere shells, commingled corporate funds and other assets, failed to segregate corporations' funds, diverted corporate funds and other assets, failed to segregate funds of the corporations, diverted corporate funds and assets to other than corporate uses, failed to adequately capitalize the corporations, used the corporate entities to procure business with Decedent with the intent to avoid payment by use of the corporate entities as a shield against personal liability, failed to follow corporate formalities, engaged in the fraudulent practice of cheating others of compensation due to them and treated these assets as their own, rendering them liable for the obligations of the company, including any judgment for unpaid commission, sales profit, consequential damages and other damages entered against Defendants.

14.     Treating the actions of the individuals as those of the corporations alone will result inequitably; the individuals deliberately undercapitalized the corporations to avoid paying the Plaintiffs' compensation and other damages in the case of a lawsuit like this one.  It would be inequitable to reward the individuals for their deliberate undercapitalization of the company, disregard for corporate form, fraudulent conduct and other wrongful conduct by limiting the Plaintiffs' remedy to collection from empty corporate coffers. This is in light of the fact that the Defendants failed to compensate Plaintiffs and committed the wrongful acts with the knowledge that they would never be able to satisfy any judgment later obtained against the corporate entities.  In sum, if the acts of the individuals are not treated as those of the individuals, the Court will be allowing the defendants to profit from their fraud at the expense of the Plaintiffs.

15.     Plaintiffs are informed and believe and thereon allege that at all times relevant to this action, each of the fictitiously named defendants was an employee, agent, servant, partner, member, shareholder, officer, director, co-conspirator, or alter ego of Defendants and was acting within the course and scope of such agency or employment.

## STATEMENT OF FACTS

## I.     FACTS RE: WRONGFUL DEATH

16.     Decedent Kim was an employee of Defendant for around 13 years.  Mr. Kim's title at Hiossen were salesman and regional director of sales at Hiossen. Mr. Kim's job included approximately 20 to 35% outside sales work and approximately 65 to 80% performing non-outside sales work, including but not limited to office sales work, and rendering services at Hiossen office, home office or Hiossen designated offsite locations. Mr. Kim performed at least 10% of his work at his home office. Although his job title was "regional director", more than 70 to 85% of his work involved non-executive and non-administrative tasks, including but not limited to sale of Hiossen products to dentists and dental offices, and rendering dental product related services, including training dentists, assisting with surgeries, picking up and delivering

products, performing accounting work, collecting payments, and organizing and attending tradeshows and workshops.

17. Mr. Kim died on May 19, 2022 as a result of a heart attack. On that day, Mr. Kim had stopped by his home office to check his emails and work on expense reimbursement request, and was on his way to the client's office when he suffered a heart attack while driving away from home.

18. Defendant Hiossen has been in the business for sale and distribution of dental products for decades in South Korea and in the United States of America, and in California at least since 2006. Defendant, as a distributor of dental products, had a duty to comply with the federal and state safety laws pertaining to its employees. As a distributing company/business of at minimum 18 years, Defendant knew, and/or should have known, that the law and public policy mandates that the employees should not be overworked, pressured, and/or harassed to a point of physical breakdown or even death, as in the herein matter. Hiossen also knew that his employees needed to take lawfully authorized meal and rest time breaks. Moreover, all employers are required to provide a safe employment environment pursuant to federal and state law, including but not limited to 29 USC § 654(a)(1) and California General Industry Safety (Cal/OSHA) Order 3203.

19. However, in complete and reckless disregard for the safety of the employees, Defendant has regularly, repeatedly, and continuously planned, organized, and demanded its employees, including Mr. Kim, to travel extensively and work over 65 hours per week. Despite its knowledge that overworking employees can lead to higher risk of stroke and heart attack, Defendant regularly and continuously required its employees, including Decedent Kim, work over his physical capacity. Moreover, Hiossen, through its management, mistreated Mr. Kim by yelling and humiliating him, and required him to perform tasks outside the scope of his job duty, including supervising harassed or litigious employee. Hiossen's mistreatment added to Mr. Kim's stress at work. Hiossen repeatedly and continuously violated the required safety and

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

labor laws, thereby subjecting its employees, including Decedent Kim, to unsafe working conditions. In sum, Hiossen failed to provide a safe working environment for its employees, including Decedent Kim.

20.    Specifically in regard to Decedent Kim, Defendant Hiossen regularly required Decedent Kim to work approximately 12 to 15 hours without proper breaks. Defendant Hiossen also required Decedent Kim to travel to various locations in the western section of the United States, including to Utah, Arizona and various cities and towns in California. On average, Decedent Kim worked 6 days per week, and sometimes 7 days per week. He travelled extensively several days per week, either within California or outside of California. Mr. Kim travelled out of state on many weekends. In fact, in 2019, he had accrued, 443.66 hours in unused paid time off ("PTO"). According to the Employee Handbook, these PTO's were accrued by not taking any PTO's because work was too busy and by working on the weekends, at the rate of 8 hours PTO's maximum per weekend. Despite his hard work, in 2020, Hiossen refused to honor Mr. Kim's PTO's earned and gave him zero PTO between 2020 and 2022, inclusive.

21.    As a result of Defendant's conduct (or lack therefore), Decedent Kim died prematurely, at the age of 54. As a result, Plaintiffs have suffered, and continue to suffer, serious loss, including but not limited to loss of economic support, counsel, and support, and for Mrs. Kim, also loss of consortium.  As a result of his death, Decedent no longer earns his usual income from his employment with Hiossen.

## II.    EMPLOYMENT CLAIMS

22.    According to his personnel records, on or around June 29, 2009, Hiossen hired Mr. Kim as the regional director. On or around June 3, 2019, Hiossen raised his annual salary to $99,200.00 ($47.69/hour). On or around October 5, 2020, Hiossen raised Kim's annual salary to $110,012.80 ($52.89/hour). In addition to the stated salary, above, Kim received commission based on his region's performance

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

(approximately 34% - 52% of annual salary) and at least 16 - 21 days of paid time off per year, and approximately $450 - $500 per month for auto expense.

**A.   MISCLASSIFICATION OF EMPLOYEE AND FAILURE TO PAY OVERTIME AND DOUBLE-TIME WAGES AND PAID TIME OFF**

23.    At Hiossen, Kim performed mundane office tasks related to merchandise sales and inside and outside sales, attended tradeshows, trained doctors, assisted dentists with surgeries, set up Hiossen products for dental offices, inventoried doctor's office, ordered, picked up and delivered merchandise, collected accounts receivables from clients, and ordered and delivered meals to dental offices. He organized training sessions to dentists on Hiossen's products, and organized and attended tradeshows. Kim also performed accounting for all his clients. Mr. Kim spent approximately 2 to 4 hours per week on accounting work alone. His work as a supervisor of his regional sales team consisted of less than 15 to 30 percent of his work. His supervisory role was limited to managing his regional salespersons. The vast majority of his work, approximately 70-85 percent, entailed non-executive and non-administrative tasks.

24.    Although approximately 70 to 85% of Mr. Kim's work was performing non-executive and non-administrative tasks, working either at his office or travelling to the clienteles, Mr. Kim was misclassified as an exempt employee and was paid a salary, without overtime or double-time compensation.

25.    In addition, Mr. Kim does not meet the outside salesman exempt status. Approximately 65-80% of Mr. Kim's work was non-outside sales work. Therefore, as a non-exempt employee he is owed overtime and double-time wages, plus penalties, and rest and meal time breaks.

26.    In the past four to five years, Decedent Kim worked in excess of 65 hours per week, including his travel time. Hiossen mandated that Mr. Kim work over 10 hours per day and on many weekends so that Mr. Kim can optimize Hiossen's business. Mr. Kim worked tirelessly and Hiossen pressured that he work excessive hours to the extent that he could not take time off to use up his PTO or breaks. Pursuant to the Employee

Handbook, Mr. Kim could have earned approximately 16 days in PTO. In addition, as he was classified as an exempt employee, Mr. Kim was able to earn up to additional 8 hours of PTO for working on the weekends. Hiossen only permitted its employees, including Mr. Kim, to earn the maximum of 8 hours of PTO per weekend even when he worked all weekend, from Friday evening to Sunday. Mr. Kim's out of state trips were frequently on the weekends. Hiossen failed to pay Mr. Kim overtime and double time compensations due to him.

27.    Pursuant to Hiossen's Employee Handbook, Hiossen's policy is recognition of "the importance of providing time for rest and relaxation" and to "fully encourage employees to get this rest by taking personal time" off. However, Hiossen was so demanding that Mr. Kim could not take time off. Mr. Kim could not take time off to rest, relax and take care of his physical health.

28.    By around December 29, 2019, Decedent Kim had accrued 443.66 hours in PTO. Moreover, in 2020, Hiossen no longer permitted Mr. Kim to accrue his PTO as Mr. Kim was accruing too much PTO. Between 2020 and May 2022, Mr. Kim had accrued many more PTO hours, but Hiossen refused to honor the hours he worked. Therefore, when Mr. Kim passed away, Hiossen paid him 443.66 hours (55.38 days) in PTO that he had accrued up to December 2019. In violation of the employment agreement, as set forth in the Employee Handbook, Hiossen refused to compensate Mr. Kim for his 16 hours of regular PTO, and the bonus PTO he earned by working on the weekends on the grounds that he had reached his maximum PTO hours. To properly comply with the state and federal employment law, Hiossen should have compensated all of these overtime and double-time hours at 1.5 times or 2 times the regular rate of pay.

**B.    AGREEMENT TO RAISE ANNUAL SALARY**

29.    In late 2019, Hiossen made an agreement that it would raise Mr. Kim's monthly compensation by 15%. On or around October 5, 2020, Hiossen raised Mr. Kim's annual salary by 10.90%, from $99,200.00 to $110,012.80. In 2021, Mr. Kim

complained that Hiossen did not perform its agreement to raise his compensation by 15%. In 2021, Hiossen, again, promised that it would raise Mr. Kim's compensation by 15% (from September 2020 compensation), in total, but failed to keep its promise.

### C. FAILURE TO REIMBRUSE BUSINESS EXPENSES

30. Mr. Kim travelled extensively throughout California by car. For instance, the day before his death, Mr. Kim drove approximately 190 miles in one day. Mr. Kim utilized his personal vehicle for all the work related travels within California. Hiossen required that all employees, including Mr. Kim, to maintain their own auto insurance. Hiossen failed to properly reimburse Mr. Kim for mileage reimbursement at $0.55 - $0.585 per mile for years 2017 through 2021, and $0.585 per mile in 2022, as required by law. Instead, Hiossen paid Mr. Kim a monthly payment of $450 to $500 for auto expense. However, this amount, arbitrarily calculated, did not properly compensate for Mr. Kim's expense. Hiossen paid some of its sales employees at $0.38/mile.

31. Mr. Kim used his personal vehicle for business travel, and travelled approximately 4,000 miles per month. Therefore, he is owed mileage reimbursement pursuant to the rate established by the Internal Revenue Services ("IRS") or the actual costs incurred in operating the vehicle. Defendant failed to reimburse Decedent as required by the IRS code, the actual costs incurred in operating the vehicle, or in a manner reasonably calculated to fully compensate Kim, and therefore, Plaintiffs are damaged in an amount to be proven at trial.

### E. FAILURE TO PROVIDE MEAL AND REST BREAKS

32. Hiossen over-worked Mr. Kim. Often times, Mr. Kim could not take his lawfully required meal time breaks at least half the time. Often times, Mr. Kim ate while driving from one job location to another, while making sales or rendering services to the clients, or while making work related telephone calls. Hiossen did not permit Mr. Kim to take his lawfully authorized breaks at least half of the time.

///
///

# FIRST CAUSE OF ACTION
## WRONGFUL DEATH: SERIOUS, WILLFUL AND MALICIOUS MISCONDUCT

### (Plaintiffs against All Defendants)

33.     Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

34.     Plaintiffs also allege that Defendants knew and/or should have known that California labor law and safety regulations require that employees to work reasonable hours and take lawfully authorized meal time and rest time breaks.  However, in complete, conscientious and reckless disregard for the safety of the employees, Defendant has regularly, repeatedly, and continuously planned, organized, marketed, sold, and operated its business which required its employees, including Decedent, to work far in excess of 40 hours per week, which included extensive travelling, and work without taking legally required breaks.

35.     In fact, Mr. Kim worked well over 65 hours per week, working more than 10 hours per day, and on many of the weekends. Mr. Kim also drove approximately 4,000 miles per month, and frequently travelled by air to out of state locations. Hiossen failed to provide approximately 50% of the legally required mealtime and rest breaks.

36.     Altogether, Defendants failed to provide a safe employment environment for Decedent Kim and violated California and federal law pertaining to employee safety, including but not limited to California and federal Labor law, 29 USC § 654(a)(1) and California General Industry Safety (Cal/OSHA) Order 3203.

37.     Moreover, Hiossen, through its management, mistreated Mr. Kim by yelling and humiliating him, and requiring him to perform tasks outside the scope of his job duty, including supervising sexually harassed employee. Hiossen pressured Decedent Kim to increase production by working in difficult and distant areas, including San Luis Obispo, Santa Maria and Fresno.

**PLAINTIFFS' AMENDED COMPLAINT**

38.     Defendant William E. Shin aka Eun Ho Shin ("Shin"), the Executive Director of Hiossen West, intentionally and continuously mistreated Decedent Kim by using his superior position to conspire against him and alienate him, causing extreme distress to Kim. Shin deliberately enticed Kim's team members, including his branch managers, to swear allegiance to Shin and alienate and defy Kim, making work extremely difficult for Kim. For example, Shin directed Kim's teammates to "line up under Shin", and not Kim. Shin falsely promised rewards to those who "lined up" under him. And, at times, he gave unfair advantage to those who "lined up" under him, to the disadvantage of Kim. For example, Shin falsified one of Kim's branch manager's performance records to reward him as a high performing employee when his performance was below average. As a result of Shin's "favoritism" towards his "followers" and conspiracy to alienate Kim, Hiossen/Decedent Kim lost some of its salesmen to Hiossen's competitor company. Decedent Kim had to work extra hours to compensate for the loss and re-organize and re-group his sales team. Defendant Shin's intentional and repeated conduct, in conscious disregard for Kim's wellbeing, made Kim's work extremely difficult and added stress to Mr. Kim, contributing to his emotional distress, physical harm, and eventually, his untimely death.

39.     Defendants' repeated and continuous failure to comply with the federal and state safety and labor law was serious, willful, malicious, and/or was in reckless and conscientious disregard of Decedent Kim.  Defendants' such conduct caused Decedent to be fatigued and actually and/or proximately caused or contributed to his heart failure. As a result of Decedent's death, Plaintiffs have suffered and continues to suffer emotional and economic harm.  Plaintiffs have been traumatized by their husband/father's death and continue to suffer emotional, mental and psychological harm. Plaintiff Jisu Cha alleges loss of consortium.  Plaintiffs have lost the love, companionship and guidance of their husband/father.  Plaintiffs have suffered financial damages.  As a result, Plaintiffs are damaged in the amount to be proven at trial.

CASE NO. 2:23-cv-00691-AB-PD

**PLAINTIFFS' AMENDED COMPLAINT**

40.     Defendants, in their conscious disregard for Decedent's safety and well-being, acted willfully and maliciously and should be punished for their conduct to deter similar conduct by Defendants and others in the industry.  Thus, the above –described acts and omissions perpetrated by Defendants were willful, malicious, wanton and oppressive, and justify the awarding of punitive/exemplary damages against them, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## WRONGFUL DEATH: NEGLICENCE, GENERAL

(Plaintiffs against Defendant Hiossen)

41.     Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

42.     As an employer, Defendant owed a duty to of care to provide a safe working environment to Decedent and comply with federal and state safety and labor laws.

43.     Defendant had a duty to comply with the federal and state safety laws and not require its employee to work longs hours for weeks without proper breaks and sufficient days off.  Defendants repeatedly and continuously violated the required safety laws, thereby subjecting their employees, including Decedent, to unsafe working conditions.

44.     Specifically in regard to Decedent, Defendant required Decedent to make repeated trips to out of state worksites and several cities all over California, and work long hours each day without proper breaks. Defendant Hiossen required Decedent to work well over 65 hours per week, including on weekends. Decedent also drove approximately 4,000 miles per month. Hiossen failed to provide approximately 50% of the legally required mealtime and rest breaks. Moreover, Hiossen, through its management, mistreated Mr. Kim by yelling and humiliating him, and requiring him to

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

perform tasks outside the scope of his job duty, including supervising harassed or litigious employee. Hiossen, including Defendant Shin's, mistreatment added to Mr. Kim's stress at work.

45. As a result of Decedent's death, Plaintiffs have suffered and continues to suffer emotional and economic harm. Plaintiffs have been traumatized by their husband/father's death and continue to suffer emotional, mental and psychological harm. Mrs. Jisu Cha lost her husband, and Plaintiffs Jaehyun Kim and Jun-Hyun Kim, lost their father. Plaintiff Jisu Cha alleges loss of consortium -- loss of love, sexual relations, companionship and comfort, affection, society, solace, and moral support and physical assistance of Decedent in the care, operation and maintenance of the home. Plaintiffs Jaehyun Kim and Jun-Hyun Kim have lost the love, companionship, comfort, affection, society and guidance of their beloved father.

46. Plaintiffs have right to recover Decedent's lost wages (past and future), funeral and burial expenses and damages for physical pain and suffering Decedent suffered prior to his death.

47. Plaintiffs have suffered financial and emotional damages. As a result, Plaintiffs are damaged in the amount to be proven at trial.

## THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Plaintiffs against all Defendants)

48. Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

49. Plaintiffs also allege that Defendant Hiossen acted extremely and outrageously when they repeatedly and willfully violated the federal and state regulations and required Decedent Kim to work beyond his physical capacity and mistreated him, as noted above.

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

50.     Likewise, Defendant Shin acted extremely and outrageously when he repeatedly and willfully used his superior position to conspire against and alienate Kim at work, and put Kim at a disadvantage, as alleged above. Thereby, Shin caused Kim extreme emotional distress.

51.     In knowingly conducting themselves extremely and outrageously, Defendants intended to cause, or recklessly disregarded the probability of causing, severe emotional distress, pain and suffering to Decedent Kim.

52.     Defendants' actions actually caused Decedent to suffer severe emotional distress, extreme stress, and eventual death.  Moreover, as a result of Decedent Kim's untimely death, Plaintiffs have suffered, and continue to suffer, shock and extreme mental distress from the loss their husband/father.  Plaintiffs have difficulty sleeping at night, and are suffering from the trauma.

53.     Defendants' actions against Decedent Kim and Plaintiffs constitute oppression, fraud or malice, in conscious disregard for their rights. Thus, Plaintiffs are entitled to exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
## FOR SURVIVAL

(Plaintiffs against all Defendants)

54.     Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

55.     As alleged above, Defendants negligently, willfully and/or recklessly, in conscious disregard for the safety of their employees and/or co-worker, actually and proximately caused Decedent's injury, ultimately leading to his untimely death.

56.     On May 19, 2022, Decedent Kim suffered a heart attack on his way to his next jobsite. From the onset of the heart attack, to the time of the eventual death,

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

Decedent underwent extreme fear, pain and suffering, entitling his estate to damages for Decedent's pain and suffering, according to proof at trial.

57.    Plaintiffs also allege that Defendants acted extremely and outrageously when they repeatedly and willfully violated the federal and state regulations when they required their employees, including Decedent to work beyond his physical capacity, without lawfully required breaks, and mistreated him. Defendant Shin intentionally caused conspired against and alienated his co-worker Kim, causing Kim extreme stress.

58.    In knowingly conducting themselves extremely and outrageously, Defendants intended to cause, or recklessly disregarded the probability of causing, severe emotional distress, pain and suffering and eventual death to Decedent. Defendants' actions against Decedent constitute oppression or malice, in conscious disregard for his rights. Thus, Decedent is entitled to exemplary and punitive damages.

59.    Plaintiffs, as successors in interest to Decedent's estate are also entitled to any and all other economic and non-economic damages and/or penalties that the Decedent would have been able to recover from Defendants had he lived.

**FIFTH CAUSE OF ACTION**
**MISCLASSIFICATION AS EXEMPT EMPLOYEE**

(Plaintiffs against Defendant Hiossen)

60.    Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

61.    Although Hiossen misclassified Decedent Kim as an exempt employee, Kim was a non-exempt employee. Despite his title as a regional director, the majority of Decedent Kim's day to day work was non-executive and non-administrative in nature. Just like his "sales" colleagues, Kim was assigned regions and dentists and dental offices to work with, from Glendale and northward, all the way up to Fresno. He was solely responsible for numerous dental offices. He was the main Hiossen contact person

17

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

for the dental offices he worked with. For example, Kim was directly and solely responsible for all of the 10 to 15 of Dr. Sahabi's offices in California.

62. Kim performed mundane office tasks related to merchandise sales and inside and outside sales, attended tradeshows, trained doctors, assisted dentists with surgeries, inventoried doctor's office, ordered, picked up and delivered merchandise, collected accounts receivables from clients, and ordered and delivered meals to dental offices. He organized training sessions, trained dentists on Hiossen's products, and organized and attended tradeshows. Decedent Kim also performed accounting work for all of his clients. Kim spent approximately 2 to 4 hours per week on accounting work. His work as a supervisor of his regional sales team consisted of less than 15 to 30 percent of his work. His supervisory role was limited to managing his regional salespersons. The vast majority of his work, approximately 70-85 percent, entailed non-executive and non-administrative tasks.

63. In addition, Decedent does not fall under the outside sales exemption. An outside sales exemption applies to employees who "customarily and regularly work[] more than half the working time away from the employer's place of business selling … or obtaining orders or contracts … ." (Wage Order No. 4-2001, subd. 2(M).) Decent Kim spent approximately 65 to 80% of his working hours performing non-outside sales work.

64. Typically, Decedent Kim's work started around 5:00 a.m., at his home office. He checked and wrote emails and made telephone calls, and took care of more urgent matters. Around 6:00 a.m., Kim headed out to his West Covina office and began work there at around 6:30 a.m. In the afternoons, Mr. Kim left his office, between around 2 to 5 p.m., to visit dental offices. As noted above, his visits to the dental offices entailed a mixture of sales and non-sales tasks, delivering merchandise, collecting accounts receivables, training doctors, assisting with surgeries, taking inventories, making new orders, purchasing and delivering meals and snacks, marketing new products, and networking.

18

65.     Although a portion of Decedent Kim's afternoon work entailed "outside sales" work selling Hiossen products, a good portion of his time was spent on rendering services, and not selling. He trained the dentists and the staff on how to use Hiossen products, assisted doctors with surgeries, performed accounting work, collected accounts receivables, and collected and delivered Hiossen merchandise and ordered and delivered meals and snacks. When Mr. Kim worked outside the office (home and Hiossen office), he performed approximately 30-60% non-sales work.

66.     On at least one weekend per month, Mr. Kim travelled to various cities in the Western part of the country, including to Salt Lake City, Arizona, and San Francisco, to organize and run workshops to train dentists, and to put on tradeshows. These tradeshows were designed to educate and market to dentists in regard to Hiossen products, in general, and were not targeted to make region specific sales. Although the work was performed outside of his home and West Covina offices, Mr. Kim performed non-sales work at the specific locations designated by Hiossen.

67.     Hiossen intentionally misclassified many of its employees as exempt executive or administrative employees and "outside" salespersons. Defendants should be penalized for misclassification of employees, and are liable for attorney's fees and costs, in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME AND DOUBLE-TIME COMPENSATION,**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510 AND 1198**

(Plaintiffs against Defendant Hiossen)

68.     Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations related to this Cause of Action.

69.     California Labor Code section 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order provide that it is unlawful to employ persons overtime without compensating them at a rate of pay either time-and-one-half or two-

19

**PLAINTIFFS' AMENDED COMPLAINT**

times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

70.     Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiffs employed by Defendants, and working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time-and-one-half for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

71.     The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiffs overtime compensation at a rate of two times their regular rate of pay for all hours worked in excess of twelve (12) hours straight.

72.     California law provides the right to overtime compensation at one-and-one-half times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work, and overtime compensation at twice the regular hourly rate for hours worked in excess of twelve (12) hours in a day/straight or in excess of eight (8) hours in a day on the seventh day of work.

73.     Hiossen, classified Mr. Kim as an exempt employee when his job duties were non-exempt, as noted above.

74.     On average, Mr. Kim worked more than 65 hours per week. Hiossen paid Mr. Kim $52.89/hour, not including mandatory commission/bonus. Plaintiffs are owed 25 hours or more per week in overtime and double time wages.

75.     In 2022, Hiossen paid Mr. Kim's estate 443.66 hours in PTO that had accrued by 2019. This bonus PTO was given in compensation for Decedent Kim's overtime work he performed prior to 2020. As noted above, the vast majority of the bonus PTO was earned by working on the weekends. Hiossen permitted Mr. Kim to earn up to 8 hours of PTO per weekend worked, regardless of the total hours worked. This means that Mr. Kim worked many hours on the weekends, in addition to his

"expected" full-time work. This compensation was paid at his regular rate of work, $52.89/hour, rather than in overtime and double time wages.

76.    Moreover, from January 2020 and forward, Hiossen refused to recognize Mr. Kim's overtime and double-time work on the weekends (even when misclassified as a salaried exempt employee) for his work on the weekends which had earned him bonus PTO hours prior to 2020. Hiossen refused to pay for any of Mr. Kim's overtime and double-time hours he earned on the weekends between 2020 through May 2022.

77.    Defendant's failure to pay Mr. Kim the unpaid balance of overtime and double-time compensation, as required by California laws, violates the provisions of California Labor Code sections 510 and 1198, and other provisions and is therefore unlawful.

78.    Pursuant to California Labor Code section 1194, Plaintiffs are entitled to recover unpaid overtime and double-time compensations to be proven at trial, as well as interests, costs, and attorneys' fees.

## SEVENTH CAUSE OF ACTION
## FAILURE TO PROVIDE MEALTIME BREAKS IN VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7 AND 512 AND IWC WAGE ORDER NO. 4-2001

### (Plaintiffs Against Defendant Hiossen)

79.    Plaintiffs incorporate by reference, as if set forth in full at this point, each and every allegation contained in the preceding paragraphs of this Complaint.

80.    At all relevant times, the IWC Order and California Labor Code sections 226.7 and 512(a) were applicable to Mr. Kim's employment by Hiossen.

81.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any meal or rest period mandated by an applicable order of the California IWC.

82.    At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) provides that an employer may not require, cause or permit an

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

employee to work for a work period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is no more than six (6) hours, the meal period may be waived by mutual consent of both the employer and employee.

83.   At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) further provide that an employer may not require, cause or permit an employee to work for a work period of more than ten (10) hours per day without providing the employee with a second uninterrupted meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

84.   During the relevant time period, Mr. Kim did not waive his legally-mandated meal periods by mutual consent, and was required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period.

85.   During the relevant time period, Mr. Kim was required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes for approximately 50% of the days he worked.

86.   During the relevant time period, Hiossen failed to pay Mr. Kim the full meal period premium due pursuant to California Labor Code section 226.7.

87.   Defendants' conduct violates applicable IWC Wage Order and California Labor Code sections 226.7 and 512(a).

88.   Pursuant to applicable IWC Wage Order and California Labor Code section 226.7(b), Mr. Kim is entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

///
///

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

## EIGHTH CAUSE OF ACTION
## FAILURE TO PROVIDE REST-TIME BREAKS IN VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 226.7, 512, AND IWC WAGE ORDER NO. 4-2001

### (Plaintiffs Against Defendant Hiossen)

89.     Plaintiffs re-allege and incorporate by this reference, as set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations are related to this Cause of Action.

90.     At all times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7, 512, and IWC Wage Order No. 4-2001 were applicable to Plaintiffs' employment by Defendants.

91.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

92.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

93.     Employers have an affirmative duty to ensure that workers are actually relieved of duty during rest periods. [*Cicairos v. Summit Logistics, Inc*. (2005) 133 CA4th 949, 962-963.]

94.     During the relevant time period, Hiossen required Mr. Kim to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked during the approximately 50% of the days he worked.

95.     During the relevant time period, Hiossen willfully required Mr. Kim to work during rest periods and failed to pay them the full rest period premium for work

performed during rest periods.

96.    During the relevant time period, Hiossen failed to pay Mr. Kim the full rest period premium due pursuant to California Labor Code section 226.7

97.    Hiossen's conduct violates applicable IWC Wage Orders and California Labor Code section 226.7. Pursuant to the applicable IWC Wage Orders and California Labor Code section 226.7(b), Mr. Kim is entitled to recover from Hiossen one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided.

### NINTH CAUSE OF ACTION
### BREACH OF CONTRACT

(Plaintiffs against Defendant Hiossen)

98.    Plaintiffs incorporate by reference, as if set forth in full at this point, each and every allegation contained in the preceding paragraphs of this Complaint.

99.    In 2019, Hiossen made an agreement that it would raise Mr. Kim's monthly compensation by 15%. On or around October 5, 2020, Hiossen raised Mr. Kim's annual salary by 10.90%, from $99,200.00 to $110,012.80. In 2021, Mr. Kim complained that Hiossen did not perform its agreement to raise his compensation by 15%. In 2021, Hiossen, again, promised that it would raise Mr. Kim's compensation by 15% (from 2020 compensation), in total, but failed to keep its promises.

100.    As Hiossen breached its agreement to pay Mr. Kim 15% additional compensation for years October 2020 through May 19, 2022, Hiossen owes Kim unpaid wages (15% increase from October 2020 through May 19, 2022, rather than 10% increase), in a sum to be proven at trial.

### TENTH CAUSE OF ACTION
### FAILURE TO PAY EARNED WAGES

(Plaintiffs against Defendant Hiossen)

101.    Plaintiffs incorporate by reference, as if set forth in full at this point, each

24

and every allegation contained in the preceding paragraphs of this Complaint.

102.   As alleged above Mr. Kim's estate is owed unpaid wages for the uncompensated hours he worked because he was misclassified as an exempt employee and was paid a monthly salary, and failed to compensate for any overtime and double time wages. Moreover, Mr. Kim is owed unpaid wages which includes a raise of 15% in salary (versus 10.9%) and for missed mealtime and rest time breaks.

103.   Should this court find that Decedent Kim was an exempt employee, he is owed pay for his PTO's earned by working on the weekends, 8 hours per weekend, from 2020 through May 2022. These hours are not discretionary PTO's, but earned wages for his work on the weekends.

104.   Pursuant to Cal. Lab. Code §§ 201, 202, 203, and other applicable laws, Mr. Kim's estate is entitled to recover their unpaid wages and waiting time penalties, for each unpaid day, up to 30 days' pay.

105.   Pursuant to Cal. Lab. Code §§ 11904 and 218.6, Plaintiffs are entitled to recover reasonable attorney fees, costs of suit and prejudgment interest.

## ELEVENTH CAUSE OF ACTION
## UNREIMBURSED EXPENSES

### (Plaintiffs against Defendant Hiossen)

106.   Plaintiffs re-allege and incorporate by reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations are related to this Cause of Action.

107.   California Labor Code Section 2802 requires employers to reimburse workers for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Section 2802, subdivision (a), provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed

them to be unlawful." Subdivision (c) of section 2802 defines " 'necessary expenditures or losses' " as including "all reasonable costs … ." *Gattuso v. Harte-Hanks Shoppers, Inc.*, ("*Gattuso*") (2007) 42 Cal. 4th 554, 561. Mr. Kim is owed mileage reimbursement pursuant to the rate established by the Internal Revenue Services ("IRS") or the actual costs incurred in operating the vehicle.

108.   As indicated in the DLSE opinion letters and policy statements previously quoted, the IRS has calculated an automobile mileage rate for federal income tax purposes, based on national average expenses for fuel, maintenance, repair, depreciation, and insurance, and this IRS mileage rate is also widely used and accepted by private business employers for calculating reimbursable employee automobile expenses. *Gattuso* at p. 569.

109.   As alleged above, Mr. Kim travelled extensively throughout California by car. For instance, the day before his death, Mr. Kim drove approximately 190 miles in one day. Mr. Kim utilized his personal vehicle for all the work related travels within California. Hiossen required that all employees, including Mr. Kim, to maintain their own auto insurance. Hiossen failed to properly reimburse Mr. Kim for mileage reimbursement at $0.55 - $0.585 per mile for years 2017 – 2022, as required by law. Instead, Hiossen paid Mr. Kim a monthly payment of $450 - $500 for auto expense. Mr. Kim drove approximately 4,000 miles per month. Mr. Kim should have been reimbursed approximately $2,340.00/month, in the sum of $15,724.80 in 2021, and $9,828.00 in 2022 alone.[1]

110.   Neither did Defendant reimburse Mr. Kim for the actual costs incurred. Although section 2802 does not prohibit an employer's use of a lump-sum method to reimburse employees for work-required automobile expenses, provided that the amount paid is sufficient to provide full reimbursement for actual expenses necessarily incurred. *Gattuso* at p. 569. Mr. Kim drove approximately 4,000 miles per month. A

---
[1] Hiossen compensated some employees at $0.38/mile.

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

compensation of $450 - $500 per month for auto expense did not reasonably compensate Mr. Kim for the expenses actually incurred.

111.   Defendant failed to reimburse Decedent as required by the IRS code or the actual costs incurred in operating the vehicle, and therefore, Plaintiffs are damaged in an amount to be proven at trial. Mr. Kim's estate is entitled to recover unreimbursed expenses plus legal interest.

## TWELVTH CAUSE OF ACTION
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

### (Plaintiffs against Defendant Hiossen)

112.   Plaintiffs re-allege and incorporate by reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations are related to this Cause of Action.

113.   Cal. Lab. Code § 226 provides that employers have a duty to provide their non-exempt employees with correct itemized statements stating total hours worked, hourly wages, gross wages, total deductions and net wages earned.  An employer who violates this code section is liable to its employees for the greater of the actual damages suffered by the employee, or $50 in civil penalties for the pay period in which a violation occurred, and $100 per employee for each subsequent pay period, up to $4,000.

114.   Decedent Kim is a non-exempt employee and is entitled to the protections of the IWC Orders and the Labor Code.  At all times alleged herein, Defendant Hiossen failed to provide correct itemized wage statements to Kim.  At all material times set forth herein, Defendant either recklessly or intentionally failed to make, keep and preserve true, accurate, and complete records of, among other things, the actual number of hours worked each workday and each workweek by Kim, the beginning and ending time of each work period, meal period and split shift interval, the total daily hours worked and the total hours worked per pay period and applicable rates of pay.

115.   Defendant's failure to furnish accurate and timely wage statements to Kim was knowing and intentional.  As a result of Defendant's conduct, Decedent Kim, and therefore Plaintiffs, have suffered injury.  The absence of accurate information on his wage statements has prevented timely challenges to Defendant's unlawful pay practices, required discovery and mathematical computations to determine the amount of wages owed, caused difficulty and expense in attempting to reconstruct time and pay records, and led to the submission of inaccurate information about wages and amounts deducted from wages to state and federal government agencies.

116.   At all relevant time period, Defendant failed to provide Kim with correct itemized wages statements, and so is liable to Plaintiffs for no less than $4,000.00 per person in civil penalties.  Defendant failed to state the correct pay rate for the overtime work.  Defendant also failed to state the correct hours worked by each of the employees each day, including Decedent Kim.  Defendant's failure was intentional.

117.   Pursuant to Cal. Lab. Code §§ 226(2) and 226(g), Plaintiffs are entitled to recover the full amount of penalties due under Cal. Lab. Code § 226(e), reasonable attorney's fees and costs of suit.

### THIRTEENTH CAUSE OF ACTION
### VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200 ET SEQ.

(Plaintiffs against Defendant Hiossen)

118.   Plaintiffs re-allege and incorporate by this reference, as if set forth in full, each and every allegation contained in all above paragraphs, inclusive, of this Complaint to the extent such allegations relate to this Cause of Action.

119.   The Unfair Competition Law ("UCL"), which is codified under California Business and Professions Code § 17200 et seq. prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

120.   By virtue of the direct injuries that Plaintiffs sustained from Defendant's wrongful conduct, Plaintiffs have standing to sue in order to obtain the remedies available to them under the UCL.

121.   The UCL authorizes injunctive relief to prevent unlawful, unfair, or fraudulent business acts for practices, and both restitution and disgorgement of money or property wrongfully obtained by means of such unfair competition.  Bus. & Prof. Code § 17203.

122.   An action may be brought under the UCL by any person, corporation or association, or by any person action for the interests of itself, its members, or the general public.  Bus. & Prof. Code § 17204.

123.   A plaintiff may bring § 17200 claim even when the underlying statutory violation does not provide the plaintiffs with a private right of action.

124.   As set forth herein, Defendant Hiossen and its Supervisors and/or Managers engaged in a pattern of unfair and unlawful business practices with respect to Decedent's employment with Defendant Hiossen in violation of Bus. & Prof. Code § 17200.

125.   Defendant Hiossen violated the Cal. Bus. & Prof. Code § 17200 by engaging in the following, wrongful, improper, and unfair conduct.  Defendant's conduct also violated the UCL as the utility of Defendant's actions and/or omissions was significantly outweighed by the gravity of the harm that it imposed on the employees and consumers.

126.   Further, the public is led to believe that Defendant Hiossen failed to provide a fair, safe, and legally sufficient work environment for its employees and comply with California laws governing Labor and Employment issues.  Defendant's pattern of wrongful, improper, and unlawful business practices is injurious to Defendant's employees and consumers alike.

127.   "Unlawful" conduct under Bus. & Prof. Code § 17200 is any practices forbidden by law, whether civil or criminal, federal or state, or municipal, statutory,

29

regulatory, or court made.  See *Farmers Ins. Exchange v. Super. Ct.* (1992) 2. Cal.4th 377,383.

128.   By proscribing 'any unlawful' business practice, § 17200 'borrows' violations of other laws and treats them as unlawful practices that the UCL makes independently actionable.  See *Blanks v. Shaw* (2009) 171 Cal. App. 4th 336, 363-64; *Schnall v. Hertz Corp.* (2000) 78 Cal. App. 4th 1144, 1153.

129.   Within three years of the filing of this complaint, Defendant Hiossen has followed and continue to follow the unlawful and unfair business practices of holding out to employees that their supervisory and legal personnel will enforce corporate Defendant's duties pursuant to state and federal laws, including, but not limited to, California Labor Code §§ 3706/3708.

130.   The violation of these laws serves as unlawful practice which have resulted in injury in fact and loss of money and property to Decedent's estate for purposes of Business and Professions Code §§17200 et seq.

131.   Plaintiffs are entitled to restitutionary damages and disgorgement of wrongful profits which constitutes or results from Defendant's conduct. To the extent that Defendant received greater profits from their business or money from Defendant's operations than it otherwise would have had Defendant and its Supervisors and/or Managers obeyed California state and federal laws, Defendant must disgorge all such profits and money in order to pay Plaintiffs the money owed to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, as follows:

1.      For general damages according to proof;

2.      For special damages according to proof;

3.      For damages for emotional distress;

4.   For damages for Decedent's pain and suffering;

5.   Disgorgement of profits;

6.   For interests;

7.   For costs of suit herein incurred and attorney's fees;

8.   Liquidated damages and penalties;

9.   Punitive and/or exemplary damages; and

10.  For such other further relief as the court may deem proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

Dated:  February 27, 2023                    **CHRISTINE PARK LAW FIRM, APC**

                                             By: _____

                                                 B. Christine Park
                                                 Attorneys for Plaintiffs

31

CASE NO. 2:23-cv-00691-AB-PD

**PLAINTIFFS' AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL AND
EMPLOYMENT LAW VIOLATIONS; AND DEMAND FOR TRIAL BY JURY**

1  B. CHRISTINE PARK (#234689)
   **CHRISTINE PARK LAW FIRM, APC**
2  3435 Wilshire Blvd., Suite 400
   Los Angeles, CA 90010
3  Tel.: (323) 578-6957
   Facsimile: (213) 289-1977
4  Email: boksoonpark@gmail.com

5  Attorneys for Plaintiffs

6

7             IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8             COUNTY OF LOS ANGELES -- UNLIMITED JURISDICTION

9

| | |
|---|---|
| JISU CHA, JAEHYUN KIM, and JUN-HYUN KIM, individually and as successor-in-interest to JIHUN KIM, Decedent, | Case No. |
| | **DECLARATION OF JISU CHA AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE** |
| Plaintiffs, | |
| v. | |
| HIOSSEN, INC., a Pennsylvania corporation; and DOES 1-30, inclusive, | |
| Defendants. | |

I, JISU CHA, do hereby declare,

1.      I am Decedent, JIHUN KIM's, surviving spouse.  I have personal knowledge of the facts stated in this declaration and if called upon as a witness, I could and would give competent testimony as set forth herein.

2.      Decedent JIHUN KIM and I had been married from December 22, 1996 until his death.

3.      My husband passed away on May 19, 2022.

4.      No proceeding is now pending in California, or anywhere else, for administration of the Decedent's estate.

1

**DECLARATION OF JISU CHA AS SUCCESSOR-IN-INTEREST
TO JIHUN KIM'S ESTATE**

5.     I, along with my two children and co-plaintiffs in this matter, JAEHYUN KIM and JUN-HYUN KIM, are the decedent's successors in interest as defined in the California Code of Civil Procedure section 377.11 et seq. and succeed to the decedent's interest in the herein action.

6.     No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the herein action.

7.     Attached herein as Exhibit "1" is a certified copy of the decedent JIHUN KIM's death certificate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was made on December 22, 2022, in La Crescenta, California.

Decedent JIHUN KIM's Surviving Spouse,
JISU CHA

2

**DECLARATION OF JISU CHA AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

**DECLARATION OF JISU CHA AS SUCCESSOR-IN-INTEREST
TO JIHUN KIM'S ESTATE**

# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC HEALTH

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

3052022122616

**CERTIFICATE OF DEATH**

3202219027538

STATE FILE NUMBER

LOCAL REGISTRATION NUMBER

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT–FIRST (Given) | JI |
| 2. MIDDLE | HUN |
| 3. LAST (Family) | KIM |
| 4a. ALSO KNOWN AS | JIHUN KIM |
| 4b. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | YES / X NO / UNK |
| 12. MARITAL STATUS | MARRIED |
| 5. DATE OF BIRTH | 11/22/1967 |
| 6. AGE Yrs. | 54 |
| 7. DATE OF DEATH | 05/19/2022 |
| 8. HOUR | 1448 |
| 9. SEX | M |
| BIRTH STATE/FOREIGN COUNTRY | KOREA |
| 13. EDUCATION | MASTER'S |
| RACE | KOREAN |
| 17. USUAL OCCUPATION | REGIONAL DIRECTOR |
| 18. KIND OF BUSINESS OR INDUSTRY | DENTAL PRODUCTS |
| 19. YEARS IN OCCUPATION | 13 |
| 20. DECEDENT'S RESIDENCE | 2515 JANET LEE DR |
| 21. CITY | LA CRESCENTA |
| 22. COUNTY/PROVINCE | LOS ANGELES |
| 23. ZIP CODE | 91214 |
| 24. YEARS IN COUNTY | 21 |
| 25. STATE/FOREIGN COUNTRY | CA |
| 26. INFORMANT'S NAME, RELATIONSHIP | JISU KIM, WIFE |
| 27. INFORMANT'S MAILING ADDRESS | 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |
| 28. NAME OF SURVIVING SPOUSE/SRDP–FIRST | JISU |
| MIDDLE | |
| LAST (BIRTH NAME) | CHA |
| 31. NAME OF FATHER/PARENT–FIRST | SEUNG |
| MIDDLE | RO |
| LAST | KIM |
| 34. BIRTH STATE | KOREA |
| 35. NAME OF MOTHER/PARENT–FIRST | SOON |
| MIDDLE | JA |
| LAST (BIRTH NAME) | LEE |
| 38. BIRTH STATE | KOREA |
| 39. DISPOSITION DATE | 05/26/2022 |
| 40. PLACE OF FINAL DISPOSITION | RESIDENCED OF JISU CHA, 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |
| 41. TYPE OF DISPOSITION | CREMATE/RESIDENCE |
| 42. SIGNATURE OF EMBALMER | GREGORY ANGON MACIAS |
| 43. LICENSE NUMBER | EMB8010 |
| 44. NAME OF FUNERAL ESTABLISHMENT | HAN KOOK MORTUARY |
| 45. LICENSE NUMBER | FD74 |
| 46. SIGNATURE OF LOCAL REGISTRAR | MUNTU DAVIS MD |
| 47. DATE | 05/25/2022 |
| PLACE OF DEATH | YARD |
| 101. COUNTY | LOS ANGELES |
| 102. FACILITY ADDRESS OR LOCATION WHERE FOUND | 2417 JANET LEE DRIVE |
| 103. CITY | LA CRESCENTA |

107. CAUSE OF DEATH
IMMEDIATE CAUSE (A) — ACUTE MYOCARDIAL INFARCTION

| Time interval | HRS |
|---|---|
| 111. DATE | 2022-05-363 |

| Field | Value |
|---|---|
| 108. DEATH REPORTED TO CORONER | Ambulance Attended / X YES / NO |
| 109. BIOPSY PERFORMED? | YES / X NO |
| 110. AUTOPSY PERFORMED? | X YES / NO |
| 111. USED IN DETERMINING CAUSE? | X YES / NO |

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107
NONE

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.)
NO

| Field | Value |
|---|---|
| FOR A FEMALE, PREGNANT IN LAST YEAR? | YES / X NO / UNK |
| 116. LICENSE NUMBER | |
| 117. DATE | |

118. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.

119. SIGNATURE AND TITLE OF CERTIFIER

120. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE

| Field | Value |
|---|---|
| 123. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH | X Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be Determined |
| 124. INJURED AT WORK? | YES / NO / UNK |
| 125. INJURY DATE | |
| 126. HOUR | |

131. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

134. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

135. LOCATION OF INJURY (Street and number, or location, and city, and state)

| Field | Value |
|---|---|
| 136. SIGNATURE OF CORONER / DEPUTY CORONER | REGINA AUGUSTINE |
| 137. DATE | 05/24/2022 |
| 138. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER | REGINA AUGUSTINE, DEP CORONER |
| STATE REGISTRAR | A B C D E |
| FAX AUTH# | |
| CENSUS TRACT | |

---

## CERTIFIED COPY OF VITAL RECORD

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of the record filed in the County of Los Angeles
Department of Public Health if it bears the Registrar's signature in purple ink.

*003438106*



MD

Health Officer and Registrar

DATE ISSUED   MAY 31 2022

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

**PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL AND EMPLOYMENT LAW VIOLATIONS; AND DEMAND FOR TRIAL BY JURY**

1  B. CHRISTINE PARK (#234689)
   **CHRISTINE PARK LAW FIRM, APC**
2  3435 Wilshire Blvd., Suite 400
   Los Angeles, CA 90010
3  Tel.: (323) 578-6957
   Facsimile: (213) 289-1977
4  Email: boksoonpark@gmail.com

5  Attorneys for Plaintiffs

6

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              COUNTY OF LOS ANGELES -- UNLIMITED JURISDICTION

9
   JISU CHA, JAEHYUN KIM, and JUN-HYUN          Case No.
10 KIM, individually and as successor-in-interest to
   JIHUN KIM, Decedent,
11                                              **DECLARATION OF JAEHYUN KIM AS**
                                                **SUCCESSOR-IN-INTEREST TO JIHUN**
12         Plaintiffs,                          **KIM'S ESTATE**

13

14 v.

15 HIOSSEN, INC., a Pennsylvania corporation; and
   DOES 1-30, inclusive,
16
           Defendants.
17

18
           I, JAEHYUN KIM, do hereby declare,
19
           1.      I am Decedent, JIHUN KIM's, daughter.  I have personal knowledge of the facts stated
20
   in this declaration and if called upon as a witness, I could and would give competent testimony as set
21
   forth herein.
22
           2.      My father passed away on May 19, 2022.
23
           3.      No proceeding is now pending in California, or anywhere else, for administration of the
24
   Decedent's estate.
25

26

27

28
                                              1
   **DECLARATION OF JAEHYUN KIM AS SUCCESSOR-IN-INTEREST TO**
                           **JIHUN KIM'S ESTATE**

4.      I, along with my mother, JISU CHA, and brother, JUN-HYUN KIM, who are co-plaintiffs in this matter, are the decedent's successors in interest as defined in the California Code of Civil Procedure section 377.11 et seq. and succeed to the decedent's interest in the herein action.

5.      No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the herein action.

6.      Attached herein as Exhibit "1" is a certified copy of the decedent JIHUN KIM's death certificate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was made on December 22, 2022, in La Crescenta, California.

Decedent JIHUN KIM's Daughter,
JAEHYUN KIM

**DECLARATION OF JAEHYUN KIM AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE**

# EXHIBIT "1"

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## DEPARTMENT OF PUBLIC HEALTH

3052022122616

**CERTIFICATE OF DEATH**

3202219027538

STATE FILE NUMBER

LOCAL REGISTRATION NUMBER

### DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| JI | HUN | KIM |

| 3A. ALSO KNOWN AS—Include AKA (FIRST, MIDDLE, LAST) | | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months Days | IF UNDER 24 HOURS Hours Mins | 6. SEX |
|---|---|---|---|---|---|---|
| JIHUN KIM | | 11/22/1967 | 54 | | | M |

| 7. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS (at time of death) | 13. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| KOREA | 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 | ☐ YES ☒ NO ☐ UNK  MARRIED | | 05/19/2022 | 1448 |

| 13. EDUCATION—Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/SPANISH (If yes, see worksheet on back) | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| MASTER'S | ☐ YES ☒ NO | KOREAN |

| 17. USUAL OCCUPATION—Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| REGIONAL DIRECTOR | DENTAL PRODUCTS | 13 |

### USUAL RESIDENCE

| 20. DECEDENT'S RESIDENCE (Street and number, or location) | | | | |
|---|---|---|---|---|
| 2515 JANET LEE DR | | | | |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| LA CRESCENTA | LOS ANGELES | 91214 | 21 | CA |

### INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, zip) |
|---|---|
| JISU KIM, WIFE | 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |

### SPOUSE/SDP AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE/SDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) | |
|---|---|---|---|
| JISU | | CHA | |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| SEUNG | RO | KIM | KOREA |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| SOON | | JA | LEE | KOREA |

### FUNERAL DIRECTOR/LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 05/26/2022 | RESIDENCE OF JISU CHA |
| | 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CREMATE/RESIDENCE | ▸ GREGORY ANGON MACIAS | EMB8010 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| HAN KOOK MORTUARY | FD74 | ▸ MUNTU DAVIS MD | 05/25/2022 |

### PLACE OF DEATH

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE ☐ IP ☐ ER/OP ☐ DOA   IF OTHER THAN HOSPITAL, SPECIFY ONE ☐ Hospice ☐ Nursing Home/LTC ☒ Home ☐ Other |
|---|---|
| YARD | |

| 103. COUNTY | 104. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 105. CITY |
|---|---|---|
| LOS ANGELES | 2417 JANET LEE DRIVE | LA CRESCENTA |

### CAUSE OF DEATH

| 107. CAUSE OF DEATH | | 108. DEATH REPORTED TO CORONER | 109. BIOPSY PERFORMED |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) ACUTE MYOCARDIAL INFARCTION | Enter the chain of events – diseases, injuries, or complications – that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time Interval Onset and Death | ☒ YES ☐ NO |
| | | HRS | 2022-05363 |
| Sequentially list conditions, if any, leading to cause (B) | | | 110. AUTOPSY PERFORMED ☐ YES ☒ NO |
| Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (C) | | | 111. USED IN DETERMINING CAUSE ☒ YES ☐ NO |
| (D) | | | ☒ YES ☐ NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| NONE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | FOR A FEMALE, PREGNANT IN LAST YEAR ☐ YES ☒ NO ☐ UNK |
|---|---|
| NO | |

### PHYSICIAN'S CERTIFICATION

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since mm/dd/ccyy    Decedent Last Seen Alive mm/dd/ccyy | ▸ | | |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|

### CORONER'S USE ONLY

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH ☒ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Pending Investigation ☐ Could not be determined | ☐ YES ☐ NO ☐ UNK | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city and zip) |
|---|

| 126. SIGNATURE OF CORONER/DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER/DEPUTY CORONER |
|---|---|---|
| ▸ REGINA AUGUSTINE | 05/24/2022 | REGINA AUGUSTINE, DEP CORONER |

### STATE REGISTRAR

| A | B | C | D | E | | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of the record filed in the County of Los Angeles
Department of Public Health if it bears the Registrar's signature in purple ink.



_____ MD
Health Officer and Registrar

DATE ISSUED    MAY 31 2022

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

*003438106*



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

**PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL AND
EMPLOYMENT LAW VIOLATIONS; AND DEMAND FOR TRIAL BY JURY**

B. CHRISTINE PARK (#234689)
**CHRISTINE PARK LAW FIRM, APC**
3435 Wilshire Blvd., Suite 400
Los Angeles, CA 90010
Tel.: (323) 578-6957
Facsimile: (213) 289-1977
Email: boksoonpark@gmail.com

Attorneys for Plaintiffs

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES -- UNLIMITED JURISDICTION

| | |
|---|---|
| JISU CHA, JAEHYUN KIM, and JUN-HYUN KIM, individually and as successor-in-interest to JIHUN KIM, Decedent,<br><br>    Plaintiffs,<br><br>v.<br><br>HIOSSEN, INC., a Pennsylvania corporation; and DOES 1-30, inclusive,<br><br>    Defendants. | Case No.<br><br>**DECLARATION OF JUN-HYUN KIM AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE** |

I, JUN-HYUN KIM, do hereby declare,

1.     I am Decedent, JIHUN KIM's, son.  I have personal knowledge of the facts stated in this declaration and if called upon as a witness, I could and would give competent testimony as set forth herein.

2.     My father passed away on May 19, 2022.

3.     No proceeding is now pending in California, or anywhere else, for administration of the Decedent's estate.

1
**DECLARATION OF JUN-HYUN KIM AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE**

4.      I, along with my mother, JISU CHA, and sister, JAEHYUN KIM, who are co-plaintiffs in this matter, are the decedent's successors in interest as defined in the California Code of Civil Procedure section 377.11 et seq. and succeed to the decedent's interest in the herein action.

5.      No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the herein action.

6.      Attached herein as Exhibit "1" is a certified copy of the decedent JIHUN KIM's death certificate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was made on December 22, 2022, in La Crescenta, California.

Decedent JIHUN KIM's Son,
JUN-HYUN KIM

**DECLARATION OF JUN-HYUN KIM AS SUCCESSOR-IN-INTEREST TO JIHUN KIM'S ESTATE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

DECLARATION OF JUN-HYUN KIM AS SUCCESSOR-IN-INTEREST TO
JIHUN KIM'S ESTATE

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## DEPARTMENT OF PUBLIC HEALTH

3052022122616     **CERTIFICATE OF DEATH**     3202219027538

STATE FILE NUMBER     LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| JI | HUN | KIM |

| 4A. ALSO KNOWN AS—Include AKA AKA (FIRST, MIDDLE, LAST) | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | 6. SEX |
|---|---|---|---|
| JIHUN KIM | 11/22/1967 | 54 | M |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS | 13. DATE OF DEATH mm/dd/ccyy | 14. HOUR 24-Hour |
|---|---|---|---|---|---|
| KOREA | 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 | YES [X] NO UNK | MARRIED | 05/19/2022 | 1448 |

| 15. EDUCATION—Highest | 16A. WAS DECEDENT HISPANIC/LATINO/SPANISH? | 16. DECEDENT'S RACE | 19. YEARS IN OCCUPATION |
|---|---|---|---|
| MASTER'S | YES [X] NO | KOREAN | 13 |

| 17. USUAL OCCUPATION—Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) |
|---|---|
| REGIONAL DIRECTOR | DENTAL PRODUCTS |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 2515 JANET LEE DR |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| LA CRESCENTA | LOS ANGELES | 91214 | 21 | CA |

**INFORMANT**

| 26. INFORMANT'S NAME RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
|---|---|
| JISU KIM, WIFE | 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |

**SPOUSE/SDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| JISU | - | CHA |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| SEUNG | RO | KIM | KOREA |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| SOON | JA | LEE | KOREA |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 05/26/2022 | RESIDENCE OF JISU CHA, 2515 JANET LEE DR, LA CRESCENTA, CA 91214 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CREMATE/RESIDENCE | ▶ GREGORY ANGON MACIAS | EMB8010 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| HAN KOOK MORTUARY | FD74 | ▶ MUNTU DAVIS MD | 05/25/2022 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE / 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|
| YARD | IP ER/OP DOA Hospice Home [X] Home Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| LOS ANGELES | 2417 JANET LEE DRIVE | LA CRESCENTA |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | | 108. DEATH REPORTED TO CORONER? |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death)   (A) ACUTE MYOCARDIAL INFARCTION | Time interval between onset and death | [X] YES NO |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST   (B) | HRS | 109. BIOPSY PERFORMED? YES [X] NO |
| (C) | | 110. AUTOPSY PERFORMED? [X] YES NO |
| (D) | | 111. USED IN DETERMINING CAUSE? [X] YES NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| NONE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | |
|---|---|
| NO | YES [X] NO UNK |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ | 116. LICENSE NUMBER / 117. DATE mm/dd/ccyy |
|---|---|---|

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH [X] Natural Accident Homicide Suicide Pending Investigation Could not be determined | 120. INJURED AT WORK? YES NO UNK | 121. INJURY DATE mm/dd/ccyy / 122. HOUR 24-Hour |
|---|---|---|

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ REGINA AUGUSTINE | 05/24/2022 | REGINA AUGUSTINE, DEP CORONER |

**STATE REGISTRAR**

| A | B | C | D | E | FAX AUTH# | CENSUS TRACT |
|---|---|---|---|---|---|---|

||||||| IIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIII

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of the record filed in the County of Los Angeles
Department of Public Health if it bears the Registrar's signature in purple ink.



Health Officer and Registrar     DATE ISSUED     MAY 31 2022

*003438106*

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

## PROOF OF SERVICE

1. I am at least age 18, not a party to this action, and am a resident or employed in the county where the mailing/delivery took place.  My business address is: 3435 Wilshire Blvd., Suite 400, Los Angeles, CA 90010. Tel.: 232-578-6957

2. On February 28, 2023, I served the copies of the following documents on the named person and addresses as indicated below:

3. Documents served: **PLAINTIFFS' AMENDED COMPLAINT**

4.      I caused the document noted above to be served via:
   **By United States Mail to All Parties on Service List.**
      I deposited such envelope in the United States Mail, at Los Angeles, California, with postage thereon fully prepaid.

— By e-Service for parties that are participants of the CM/ECF system. Service is being made electronically on those parties on the Service List below that are registered users of the CM/ECF.

_X_   **Email delivery/E-Service** at the addresses indicated on the Service List below.

5.      I declared under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Dated: 2/28/2023

Print Name:  B. Christine Park

Signature of Declarant: _____

## SERVICE LIST:

Michael Slocum, Esq.
Robert Bernstein, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Email: slocumm@gtlaw.com
bernsteinrob@gtlaw.com

Charles Thompson, Esq.

32

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**

1  Anthony Guzman II, Esq.
2  Greenberg Traurig, LLP
   101 Second Street, suite 2200
3  San Francisco, CA 94105-3668
4  Charles.thompson@gtlaw.com
   guzmanan@gtlaw.com
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

33

CASE NO. 2:23-cv-00691-AB-PD
**PLAINTIFFS' AMENDED COMPLAINT**